[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action, by writ and complaint, claiming a dissolution of the marriage of the parties and other relief, as on file, came to this court on May 10, 1991 with a return day of May 21, 1991, and thence to later dates when the parties appeared for a limited contested trial which was heard on October 6, 1992.
The Court, having heard the evidence, finds the following:
The wife, Eileen C. LaSita, whose maiden name was Eileen Heafey, was lawfully married to the husband, Salvatore LaSita, on November 28, 1964, at Norwalk, Connecticut. One party has resided continuously in this State twelve months next before the date of the filing of the complaint and all statutory stays have expired. The marriage of the parties has broken down irretrievably. Four children have been born to the wife since the date of the marriage, all of whom are the lawful issue of this marriage and none of whom are now minors. Neither of the parties had been married before. The husband became 53 years of age on October 30, 1992 and the wife will become 50 years of age on March 3, 1993. The wife had completed high school and one year of college at the time of the marriage in 1964. The husband has had little formal education. They resided in Norwalk until 1967 when the husband's employment made it more convenient to move to Danbury where they were able to purchase a less expensive home. The husband was employed as a mechanic with Benrus Corporation and it was agreed that the wife would remain at home to provide care for their children. Sometime after the birth of the second child, the wife attempted to go to work but it was impractical because of the need to care for the young children and the CT Page 1305 husband's inability to adjust his work schedule to assist in that endeavor. In 1972, the parties acquired a second residence and kept their first residence as a multi unit rental property. The wife assisted the husband by writing out bills, receipts and checks and keeping the books of account while the husband collected the rents and did the maintenance. At the same time, the husband continued in his employment at Benrus and the wife continued to run the home and be the one primarily responsible for raising the children. In the Spring of 1973, the Husband's position with Benrus terminated. Sometime thereafter, he was injured in an automobile accident. Approximately in January, 1976, the parties purchased a laundromat business. The husband negotiated the purchase, and title to the business was placed in the wife's name due to financial considerations. From then on, the husband ran the laundromat with several employees and the wife did the books except for income tax preparation. In 1978, the laundromat was moved to property they purchased at 16-16 1/2 Main St., Danbury, which real estate is the major asset of the parties. In the interim, after the youngest child entered nursery school, the wife also worked at the front desk of the laundromat. During this time, the husband, who had experience in carpentry, plumbing and electrical work, renovated the Main St. property to provide for many income units. In 1989, the laundromat business was sold and the parties took back a promissory note in the original amount of $150,000.00, with interest at the rate of 10% per annum, payable over 10 years. Said note is currently held by the parties and payment has been made regularly on it. In 1982, the parties purchased a residence at 23 Grand Street, Danbury. Said residence became the family residence and is still occupied by the husband, the wife having moved out in September, 1991, after the commencement of this action. The two oldest daughters reside with the father. The youngest daughter resides with the mother at Coalpit Hill in Danbury. On the date of this hearing, October 6, 1992, the son, who was still a minor, (he has since reached his majority) was residing with the father after having resided with the mother some eight or nine months. As of said date, both parties believe that it is more appropriate that the son reside with the father.
The wife has had some limited experience as a bus driver for handicapped children and also worked a short period of time in October and November, 1991 for a laundry and dry cleaner. She has expressed a desire to become a travel agent which would require some formal education and training. The husband, who recently suffered a broken leg, is primarily interested in running the real estate rental business at the Main Street Property. Their business entity in this regard, S 
E Rental has provided for medical insurance for the family and it may be more difficult and expensive to obtain new medical insurance coverage. CT Page 1306 The wife has been hospitalized two times in 1991 for depression and related mental illness and has also had surgery for arthritis of the hands. The husband has been hospitalized in September, 1991 for a blood clot on the kidney and in 1992 for pneumonia. The wife has had anxiety attacks over the years, originally in 1968 and later in 1985 and 1990.
The husband and the wife testified to a variety of circumstances which they believe led to the breakdown of the marriage. Among other causes, the wife claimed that the husband objected to the high cost of her medical bills and the need to obtain treatment for her mental illness and his refusal to pay for treatment. She also complained of a lack of a reasonable interpersonal relationship with her husband and that she felt totally subjugated to him. Among other causes, the husband claimed that he could never satisfy his wife's money needs; that no matter how much money he made, it was never enough; that she was extravagant in her purchases; that he had doubts as to the need for certain types of medical treatment.
The Court has listened to the parties and reviewed all of the exhibits and the financial affidavits of the parties. In addition, the Court has taken into consideration all of the criteria set forth in Connecticut General Statutes Sec. 46b-81 (the assignment of property and transfer of title statute), Sec. 46b-82 (the alimony statute).
The Court has likewise reviewed the various claims for relief and proposals for judgment submitted by counsel on behalf of their clients, which in some instances are in agreement.
Accordingly, the Court orders as follows:
A decree of dissolution of the marriage shall enter on the grounds of irretrievable breakdown of the marriage.
ALIMONY
Each party's proposal for judgment has suggested that neither party pay alimony to the other. In reviewing the evidence, the financial affidavits of the parties, and taking into account Sec. 46b-82 of the Connecticut General Statutes, it is the order of the Court that neither party shall pay alimony to the other.
ATTORNEYS FEES
Each party's proposal for judgment suggests and it is the order of the Court that each party shall be solely responsible for his or her own CT Page 1307 legal fees and costs.
DISTRIBUTION OF ASSETS AND LIABILITIES
This is a marriage of some 28 years which has produced four children, now all adults. Each of the parties has a variety of health problems. Each party's proposal for judgment suggests, and the Court finds that it is appropriate, to divide the assets of the parties equally, as nearly as possible.
Additionally the Court finds that as nearly as is possible, it is appropriate that the parties equally share in their existing medical bills.
DEBTS AND FUNDS FOR PAYMENT THEREOF
The wife shall be solely responsible for the Connelly Co. Ltd. debt listed on her financial affidavit.
The husband shall be solely responsible for the payment of $32,000.00 on account of the Silver Hill Hospital bill, which he shall immediately pay. He shall have the use of all of the proceeds of the bank account which was in joint names at Liberty National Bank.
All the remaining items of indebtedness, including any remaining indebtedness to Silver Hill Hospital, shown on the wife's financial affidavit, shall be immediately paid by selling the Pilgrim Bond Fund and using the proceeds thereof. If there still remains any indebtedness, they shall be shared equally by the parties.
PERSONAL PROPERTY
Each party shall retain, free and clear of any claims of the other, the motor vehicles they are presently operating.
Should there be any remaining proceeds from the Pilgrim Bond fund, they shall be shared equally by the parties.
The Liberty National Bank Stock listed on the the husband's financial affidavit as having no value, shall be shared equally by the parties, who shall then be able to pursue their remedy, if any.
The Court, taking into consideration his inheritance monies that the husband contributed to the marriage, orders that he shall be entitled to keep the proceeds of the IRA account listed on his financial CT Page 1308 affidavit.
Each party shall own a one half interest in the promissory note from South End Laundry and shall be entitled to one half (1/2) of each payment on said note, both as to principal and interest, with each party bearing his or her income tax consequences as a result of said payments.
The parties shall share equally the current net proceeds of S 
E Rentals, including any funds contained in the cash pouch.
Except as set forth above, each party shall retain all other tangible and intangible personal personal property now in his or her possession, free and clear of any claim of the other.
REAL ESTATE
23 GRAND STREET, DANBURY CONNECTICUT
In their various proposals, neither party has expressed any great interest in retaining the residential real estate located at 23 Grand Street, Danbury, Connecticut. Testimony revealed that the real estate has previously been on the market at a price which apparently was too high. Accordingly, said real shall be placed on the market for sale at a reasonable price forthwith. The net proceeds of the sale shall be shared equally by the parties. Until sale, the party occupying the premises, shall be solely responsible for payment of real estate property taxes, sewer and water charges, insurance, maintenance and repairs. During the period of occupancy, the party who occupies shall pay to the other party the sum of $300.00 per month for use and occupancy.
16-16 1/2 MAIN STREET, DANBURY
After a variety of proposals, the parties seem to have reached a consensus that the husband should become the owner of said real estate and that he should finance his acquisition of the wife's one half (1/2) interest therein by giving her a purchase money second mortgage. The parties agreed that the the net equity in the real estate after deducting the balance of the first mortgage is approximately $566,500.00. The value of a one half interest, therefore, is $283,250.00.
Accordingly, it is ordered that the wife convey to the husband, by quit claim deed, her interest in and to said real estate. In consideration of said conveyance, it is ordered that the husband convey CT Page 1309 to the wife a promissory note secured by a purchase money second mortgage In the amount of $283,250.00 with interest at the rate of 9% per annum, amortized monthly over a 30 year period. Said note and mortgage shall be in form substantially similar to lending institution notes and mortgages covering such real estate, including provisions concerning property insurance, attorney's fees in connection with collection efforts after default, the right to prepay any portion or all of the principal at any time without penalty (this will give the husband the opportunity to reduce the mortgage upon the sale of the residential real estate), and that the entire remaining balance shall become due and payable upon any refinancing and/or transfer of title of the subject premises. The husband shall, thereafter, be solely responsible for any and all costs and expenses in connection with said real estate, including, but not limited to mortgage payments on the first mortgage. all taxes, insurance and maintenance costs. He shall indemnify and hold the wife harmless from all claims and liabilities therefrom.
FUTURE MEDICAL EXPENSES AND INSURANCE
It has been indicated, that, due to the wife's existing medical condition and history, it may be difficult for her to obtain reasonable health insurance coverage if she cannot continue to be covered under the existing medical insurance provided by the business entity known as S. 
E. Rental. It is the intention of the Court that each party, henceforth, be responsible for their own medical costs including insurance premiums in connection therewith.
The Court orders the parties to explore methods of allowing the wife to maintain her current medical insurance although she shall be solely responsible for the cost of said insurance. They are ordered to report to the Court within a reasonable time the results of said endeavor.
MORTON I. RIEFBERG JUDGE OF THE SUPERIOR COURT